FILED

2023 Jul-25  AM 11:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## IN THE SOUTHERN DIVISION

| | | |
|---|---|---|
| **TERRICA INGRAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:23-cv-00505-ACA** |
| | ) | |
| **CHIEF JASON DOBBINS, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Terrica Ingram was watching Defendant Chief Jason Dobbins, Police Chief for the Town of Owens Crossroads, arrest non-party Jeremy Sweeney in her front yard when Chief Dobbins told her to go in her house. When Ms. Ingram refused, Chief Dobbins tried to slam Ms. Ingram's foot in her door, refused to provide his name and badge number when asked, and entered Ms. Ingram's home without permission or a warrant. When Ms. Ingram continued to protest, Chief Dobbins arrested Ms. Ingram for disturbing the peace and was held in jail for fourteen hours until she made bail. The charges against Ms. Ingram were eventually dismissed.

Ms. Ingram filed suit in federal court against Chief Dobbins and the Town of Owens Crossroads for false arrest in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 and "unreasonable home entry and search" in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983. (Doc. 1 at 1 ¶ 1, 5–8 ¶¶ 58–79).

The Town has moved to dismiss the claims against it because Ms. Ingram's complaint does not state a claim for *Monell* liability. (Doc. 8).

The court **WILL GRANT** the Town's motion to dismiss.

## I.   BACKGROUND

When deciding a motion to dismiss, the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018).

The Chief of Police of the Town of Owens Crossroads, Jason Dobbins, knocked on Ms. Ingram's door and asked to see Jeremy Sweeney. (Doc. 1 at 2 ¶¶ 4–6). When Mr. Sweeney went outside to see Chief Dobbins, he arrested Mr. Sweeney. (*Id.* at 2 ¶¶ 8–9). Ms. Ingram was watching the arrest from the doorway and Chief Dobbins told her to go back inside the house. (*Id.* at 2 ¶¶ 10–11). Ms. Ingram stated that she was in the house and that she "had a right to see what was happening." (*Id.* at 2 ¶ 12). When Ms. Ingram asked Chief Dobbins if he had a warrant, Chief Dobbins yelled at Ms. Ingram that he did not "have to show her anything" and attempted to slam Ms. Ingram's foot in her door (Doc. 1 at 2 ¶¶ 13–15).

Ms. Ingram and Chief Dobbins continued to squabble (*id.* at 2–3 ¶¶ 17–25) before eventually Chief Dobbins entered Ms. Ingram's house "without her permission or a warrant to do so," which he claimed he was allowed to do (*id.* at 3 ¶¶ 26–27). Ms. Ingram told Chief Dobbins he could not be in her home without a

2

warrant but Chief Dobbins ignored her and instead followed Ms. Ingram around her home harass[ing] and menac[ing] her." (*Id.* at 3 ¶¶ 28–29). Once Chief Dobbins left Ms. Ingram's home, Ms. Ingram again asked Chief Dobbins "to show her a warrant." (Doc. 1 at 3 ¶ 30). In response, Chief "Dobbins turned around in her driveway and told [Ms. Ingram] she was under arrest." (*Id.* at 3 ¶ 31).

Chief Dobbins then grabbed Ms. Ingram's arm and "slammed her on her vehicle." (*Id.* at 3 ¶ 33). He then threatened to slam Ms. Ingram on the ground if she resisted arrest and fastened handcuffs on her wrists so tight that her hands became numb. (*Id.* at 3 ¶ 34, 4 ¶ 37). Ms. Ingram told Chief Dobbins that her children were in the house and that she did not have anyone to watch them if she was arrested. (Doc. 1 at 4 ¶ 38). Chief Dobbins then called DHR and told the caseworker that arrived that "he feared for [Ms.] Ingram's children's safety because her house was in disarray." (*Id.* at 4 ¶¶ 39, 45–46). Ms. Ingram told the caseworker that "the only thing wrong with her house was that the dishes had not been washed" (*id.* at 4 ¶ 47), but it is unclear whether that satisfied the caseworker.

Chief Dobbins then placed Ms. Ingram in the back of his patrol car and told her that "he would not have to arrest her if he had not already said she was under arrest as opposed to merely detaining her." (*Id.* at 4 ¶¶ 48–49). Chief Dobbins then arrested Ms. Ingram for disturbing the peace and "told her that she could plead insanity and the charge[] may be dropped." (Doc. 1 at 4 ¶¶ 50–51) (quotation marks

omitted). Ms. Ingram was in jail for fourteen hours while waiting to make bail. (*Id.* at 5 ¶ 52). The charge against Ms. Ingram was eventually dismissed. (*Id.* at 5 ¶ 52).

Ms. Ingram then filed this lawsuit against the Town of Owens Crossroads and Chief Dobbins. (Doc. 1). The complaint lists four counts: (1) false arrest in violation of the Fourth Amendment under 42 U.S.C. § 1983 against Chief Dobbins; (2) false arrest in violation of the Fourth Amendment under 42 U.S.C. § 1983 against the Town; (3) "unreasonable home entry and search" in violation of the Fourth Amendment under 42 U.S.C. § 1983 against Chief Dobbins; and (4) "unreasonable home entry and search" in violation of the Fourth Amendment under 42 U.S.C. § 1983 against the Town. (*Id.* at 1 ¶ 1, 5–8 ¶¶ 58–79).

## II.    DISCUSSION

The Town moves to dismiss both of Ms. Ingram's claims against it because the complaint cannot impose municipal liability on the Town. (Doc. 8). Before addressing the merits of the Town's arguments, the court must clear up a dispute about the appropriate standard to survive a motion to dismiss.

Ms. Ingram, citing *Conley v. Gibson*, 355 U.S. 41 (1957), contends that to survive the Town's motion to dismiss, her complaint need only give "the defendant fair notice of what the claim is and the grounds upon which it rests." (Doc. 14 at 3). That pleading standard has been defunct for over fifteen years. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Instead, to survive a motion to dismiss, a

4

plaintiff must plead enough facts that, if true, "state a claim to relief that is plausible on its face." *Id.* "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (cleaned up). The court cannot credit conclusory allegations with a presumption of truth. *Doe v. Samford Univ.*, 29 F.4th 675, 685 (11th Cir. 2022).

A municipality can be "liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *Baxter v. Roberts*, 54 F.4th 1241, 1269 (11th Cir. 2022) (cleaned up). The doctrine of *respondeat superior* does not impose liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, to hold a city liable for the actions of its officers, a plaintiff "must identify a municipal policy or custom that caused" the constitutional injury. *Gold v. City of Mia.*, 151 F.3d 1346, 1350 (11th Cir. 1998) (cleaned up).

To establish that a municipality's policy or custom caused a plaintiff's injury, the plaintiff must either "(1) identify[] an official policy; (2) identify[] an unofficial custom or widespread practice" within a municipality that it essential has "the force of law; or (3) identify[] a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

Ms. Ingram alleges that Chief Dobbins was the final policymaker for the Town and his "actions are appropriately deemed the policy of Owens Crossroads." (Doc. 1 at 6 ¶¶ 65–66, 7–8 ¶¶ 76–77). She also alleges that "[t]he Town has a pattern and practice of allowing its officers to make arrests without probable cause" and "allowing its officers to enter the private residences of private citizens without consent, warrant, or exigent circumstances" and conduct illegal searches. (*Id.* at 6 ¶¶ 67–68, 8 ¶¶ 78–79). Thus, Ms. Ingram attempts to establish *Monell* liability by alleging there was an unofficial custom or policy that violated her rights and that Chief Dobbins's actions, as a final policymaker, can be imputed to the Town.

The Town contends that these allegations are insufficient to establish *Monell* liability because (1) Ms. Ingram has not identified any other incidents where Owens Crossroads police officers behaved inappropriately; and (2) Chief Dobbins is not a final policymaker for the Town. (Doc. 9 at 4–11). The court agrees.

To establish a governmental entity had an unofficial custom or practice of committing constitutional violations, a plaintiff must show that violations are "sufficiently widespread" and "occur with frequency." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1294 (11th Cir. 2004). A single incident of unconstitutional conduct cannot establish a custom or policy of committing constitutional violations. *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1133 (11th Cir. 2021).

Here, the only alleged constitutional violation Ms. Ingram points to is the one she herself is bringing. (*See* doc. 1). In both of her claims against the Town, Ms. Ingram states without factual support that "[t]he Town has a pattern and practice of" committing various constitutional violations (*id.* at 6 ¶¶ 67–68, 8 ¶¶ 78–79), but this is a conclusory allegation that the court need not credit, *see Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). Because Ms. Ingram failed to point to any similar constitutional violations to the ones she is bringing against the Town, she has failed to establish the Town had an unofficial custom or practice to violate its citizens' rights.

Ms. Ingram also cannot establish *Monell* liability through the actions of a final policymaker. Ms. Ingram claims Chief Dobbins is the final policymaker for the Town. (*See* doc. 1 at 6 ¶ 65, 7 ¶ 76). For an individual to be a final policymaker for a town, the town must have "delegated final decisionmaking authority in a particular area" to that individual. *Harland*, 370 F.3d at 1291. This means the individual's decisions must "have legal effect without further action by the governing body, and . . . the governing body [must] lack[] the power to reverse the member or employee's decision." *Id.* at 1292 (internal citations omitted).

Whether a government official is considered a final policymaker is resolved by looking to state law. *Chabad Chayil, Inc.*, 48 F.4th at 1229. In towns in Alabama,

only the mayor and the city council are vested with final policymaking authority for the town. *See* Ala. Code § 11-43-81 ("The mayor shall be the chief executive officer, and shall have general supervision and control of all other officers . . . ."); *id.* at § 11-43-43 ("All legislative powers and other powers granted to the cities and towns shall be exercised by the council . . . ."); *id.* at § 11-43-5 ("The council may provide for a . . . chief of police . . . and shall specifically prescribe their duties."). Because the city council of Owens Cross Roads is required to "specifically prescribe" Chief Dobbins's duties, Chief Dobbins cannot be a final policymaker for the Town. Accordingly, Ms. Ingram cannot establish *Monell* liability against the Town.

## III.   CONCLUSION

For the reasons explained above, the court **WILL GRANT** the Town of Owens Crossroads' motion to dismiss all claims against it.

**DONE** and **ORDERED** this July 25, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE